LAKESHORE BANK, N.A., Oklahoma City, Oklahoma; Wilshire Bank, Oklahoma City, Oklahoma; Community Bank, Oklahoma City, Oklahoma; Rockwell Bank, N.A., (Proposed), Oklahoma City, Oklahoma and First National Bank of Bethany, Bethany, Oklahoma, Appellants,

v.

TWIN LAKES BANK (Proposed), Oklahoma City, Oklahoma formerly First Hefner Bank (Proposed); Oklahoma City, Oklahoma, Appellee.

No. 56695.

Supreme Court of Oklahoma.

Sept. 28, 1982.

Rehearing Denied Nov. 9, 1982.

Reid E. Robison, Lou Ann Ables, Oklahoma City, for appellants.

Jerry R. Nichols, Thomas P. Nally, Kothe, Nichols & Wolfe, Inc., Tulsa, for appellee.

DOOLIN, Justice:

This is a long-standing state bank charter case which has its conception in 1970. The major question presented for resolution on the appeal can be succinctly stated: Did the State Banking Board exceed its mandate from this Court when it permitted Twin Lakes Bank (proposed) to amend its application for charter to change its location and trade area?

Our last encounter resulted in a decision found at *State of Oklahoma, ex rel. C.W. Smith et al. v. Banking Board*, 612 P.2d 257 (Okla.1980). First Hefner Bank (pro-

posed), now Twin Hills Bank (proposed), sought a writ of mandamus to compel the Banking Board to hear evidence of changed conditions and to permit it to amend the proposed location of its bank building. In that decision we said:

"In this instance we believe the Board acted arbitrarily in refusing to hear evidence as to changed conditions in the trade area which might warrant a change of location by Hefner to better serve the public need in the particular trade area." 612 P.2d at 260.

In that decision we also ordered that a charter for the proposed Rockwell State Bank be withheld pending Hefner's renewed application. Since then, however, Rockwell applied for a *federal* bank charter, near the same location Twin Lakes now seeks a state charter to occupy.

In retrospect, the history of this controversy looks like this: In 1970 Wilshire Bank sought a state charter which was denied. While on appeal First Hefner sought a state charter at the same location, which was approved. Wilshire asked this Court to stay First Hefner's charter until its appeal on certiorari was decided. We granted that request. In the meantime Lakeshore Bank received a federal charter near the Wilshire-Hefner location. In *Brown v. Banking Board*, 579 P.2d 1267 (Okla.1978) this Court ordered the granting of the Wilshire application and ordered the Banking Board to review the First Hefner application in light of the Wilshire Bank and the Lakeshore Federal Bank within the same trade area. Rockwell State Bank (proposed) applied for a charter at a location one mile from the original First Hefner Location, now the site of the Wilshire Bank. Later, First Hefner requested to amend its charter application to locate near the site of the proposed Rockwell location. The Banking Board denied the requested amendment for change in location, a move we reversed in *State v. Banking Board*, 612 P.2d 257 on May 27, 1980, when we ordered the Board to consider evidence of a change in location *within the same trade area*, and ordered a stay in granting the state charter to Rockwell Bank (proposed).

Appellants ("Lakeshore Bank") argue First Hefner ("Twin Lakes Bank") has submitted an entirely new application. It notes that 6 O.S. 1971, § 305 sets forth ten items to be covered in an application for a new bank charter, and all ten have been changed between the first application of First Hefner and the last application of Twin Lakes.

On both applications, a marketing expert presented exhibits which designated a trade area from which the proposed bank would draw 75% of its customers. When the location of the proposed bank moved one mile to the west, the trade area shifted 2½ miles west, to roughly the same trade area outlined in the previous application for the proposed Rockwell State Bank (before it sought a federal charter.) The marketing expert said had he used the old trade area, with the new location, he could not have adhered to the 75% guideline of the Banking Commission.

The proposed Twin Lakes Bank is located in the extreme eastern portion of the new area, whereas the proposed First Hefner Bank was located in approximately the middle of the old trade area.

Therefore, it is established that the trade area, as well as the proposed location of Twin Lakes Bank, has been changed. The question remains: does such change violate the mandate of this Court of May 27, 1980?

■ We first note that the new location for Twin Lakes *is within* the trade area boundaries established for the now abandoned First Hefner Bank between Portland on the east and County Line on the west. The marketing expert testified that in order to submit the new location it was necessary to submit new trade area boundaries as the boundaries change as the location changes. Also, Hefner's proposed location change was made known to all parties, and to this Court, prior to the petition for certiorari which resulted in this Court's order of May 27, 1980. In fact, in that order we said that to restrict Hefner to the same MacArthur Street location would preclude the need for a third bank in that general vicinity.

We find Twin Lakes did not violate the mandate of this Court and therefore dismiss this proposition of error.

■ Lakeshore next argues that the Board's finding that the trade area could support two banks is against the evidence. This argument takes into consideration the Federal Banking Charter of Rockwell Bank (pending at the time of the hearing.)

Testimony from the Twin Lakes marketing expert said that while he questioned the *need* for two new banks at the Rockwell and Northwest Highway location, "I think it could very handily support two banks." When asked by the Banking Commissioner to reconcile those two statements, he said the potential for deposits in that neighborhood is "so high," and the area is growing very rapidly. He added that the only people included in the new trade area, who were not included in the old trade area, are located west of County Line Road, and their percentage of the total is "minimal."

In view of the evidence presented on the issue of "need," we find the Banking Board's decision was in fact based on sufficient evidence, keeping in mind that the federal charter application of Rockwell Bank had not even been approved, much less a bank in existence at that location, when the Banking Board made its decision.

■ In its third proposition of error, Lakeshore argues the Board's finding that the public need and advantage would be promoted by the establishment of Twin Lakes at the new location was not supported by the evidence.

The requirement that the public need and advantage be established is found at 6 O.S. 1981, § 306 F(1). However, its argument is based on the establishment of the Rockwell Federal Bank, which had not been approved at the time of the Board's hearing. Even had it been at reality at the time, there was testimony, as outlined in the previous proposition, that the area could support two banks with little trouble. We hold the Board's finding of public need and advantage is supported by the evidence.

■ Lakeshore argues the Board erred in finding that no legal conflict existed to prevent Olen Treadway from serving as a director of Twin Lakes Bank. Treadway is a director or officer of five other Oklahoma banks, including one at Blanchard in McClain County.

It argues that the Federal Depository Institute Management Interlocks Act (12 U.S.C. § 3201 et seq.) prohibits dual service as a management official of unaffiliated institutions or holding companies in the same, or an adjacent, city, town or village. It argues the Twin Lakes Bank and the bank in Blanchard are in adjacent towns.

The record discloses that Treadway, in response to a stipulation of the Twin Lakes' attorney, said he would resign from the Blanchard Bank position in order to remove any interlocking director conflict, if there is proven such a prohibition. There was general disagreement between the attorneys as to the applicability of the Federal Interlocks statute. The Board ruled that Treadway was a legal incorporator of Twin Lakes in that the statute calls only for "proposed directors" and if it later turns out that Treadway cannot serve, the Board said at that time it will rule if he can serve. We find no error in the Board's decision.

■ Lakeshore argues that Board erred in denying its application to correct the record. This occurred when Lakeshore attempted to correct what it termed a clerical error in Mr. Treadway's testimony in regard to the previous proposition of error.

The record indicates Mr. Treadway stated, "But, I will resign if there is a problem. And I will work with the Board in finding ...." Lakeshore wished to add to that statement the following: "my replacement for the Board of Directors of Twin Lakes." It cites as authority 12 O.S. Ch. 15, Rule 1.24. The Board heard the application, but rejected it.

We find no error in the Board's refusal to allow the correction. A thorough read-

ing of that section of the record makes the meaning of Mr. Treadway's statement abundantly clear, as noted in the previous proposition of error. Mr. Nichols, Twin Lakes Attorney, told the Board as follows:
"... 'Secondly, Mr. Treadway I would ask to stand up and stipulate that at this time, if there is a federal prohibition relevant to interlocking directors, that he would resign relevant to the Blanchard position to remove any interlocking director conflict, at which time he would be able to go forward as a director of this bank .... Olin, can you stipulate to that?'

Mr. Treadway: 'If that is the case I would resign ... But, I will resign if that's a problem. And I will work with the Board in finding ...' "

■ Lakeshore next argues the Board erred in finding that Twin Lakes has complied with all applicable provisions of the Oklahoma Banking Code, in two respects:

1. Because Mr. Treadway is legally disqualified from serving as a director, Twin Lakes is without the five directors it needs to operate a state bank; and

2. Twin Lakes subscribers failed to provide sufficient paid-in funds pursuant to 6 O.S. § 304.

Subsection 1 iterates the argument about Mr. Treadway, arguing he is disqualified from serving as a director and has not offered to resign from the Blanchard Bank. We have responded adequately to this proposition of error.

Subproposition 2 argues that section 304 [1] requires each subscriber pay in cash a sum at least equal to 5% of the par value of stock purchased to be used to defray the expenses of organization. It contends Twin Lakes' own records indicate that while the paid-in amount should equal $55,-000.00, it totals only $45,800.00, and is thus not in compliance with state law. Twin

---

1. 6 O.S.1981, § 304. Expenses of organization.
"A. In addition to the paid-in capital and surplus requirements as set forth in Section 303, each subscriber at the time he subscribes to the stock of a proposed state bank or trust company shall pay in cash a sum at least equal to five percent (5%) of the par value of such stock into a fund to be used to defray the expenses of organization. No organization expense shall be paid out of any other funds of the bank."

Lakes counters that much of the money has already been spent on organizational expenses and that each of the subscribers, past and present, has paid in his 5% of the par value to more than total the $55,000.00 required by statute. In its "Conclusions of Law" the Banking Board found as follows:

"The Board finds that each subscriber to the stock of the bank did pay in cash a sum equal to at least five (5) per cent of the par value of such stock for organizational expense and as required by the banking code. The Bank [sic] also finds that the Organizational Expense account amount ... more than equal any such organization expense payment requirements of the banking code."

To support its proposition Lakeshore can cite us only to the transcript of the Board proceedings wherein both attorneys argued to the Board. The Board, after examination of the exhibits and argument, sided with Twin Lakes. We find no reason to reverse their decision.

Finally, Lakeshore argues the Board erred in finding that Twin Lakes has a reasonable promise of successful operation, as required by 6 O.S.Supp.1980, § 306(F). It again rehashes earlier arguments regarding the pending application of the Rockwell National Bank and argues there is no need for two banks in the same area; and again rehashes the Treadway argument in that there are now only four directors, none with banking experience. As we have already discussed and rejected these propositions, and in light of the Board's specific finding,[2] we dismiss this proposition of error.

AFFIRMED.

All the Justices concur.

---

**2.** "The Board makes the following conclusions of Law:

    1. That the public need and advantage will be promoted by the establishment of the proposed bank;

    2. That conditions in the community (Northwest Oklahoma City, Oklahoma) in which the bank will transact business afford reasonable promise of successful operation;"